IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

---

PERRONE ROBOTICS, INC. AND PERRONE
ROBOTICS INNOVATIONS, LLC,

        *Plaintiffs,*

    v.

TOYOTA MOTOR NORTH AMERICA, INC.
AND TOYOTA MOTOR CORPORATION,

        *Defendants.*

---

Civil Action No.

## Complaint for Patent Infringement

Plaintiffs Perrone Robotics, Inc. and Perrone Robotics Innovations, LLC file this Complaint for patent infringement against defendants Toyota Motor North America, Inc. and Toyota Motor Corporation (collectively, "the Toyota Defendants") for infringing U.S. Patent Nos. 12,181,877; 11,782,442; 11,314,251; 9,833,901; and 9,195,233 (collectively, the "Patents-in-Suit") and allege as follows:

### Parties

1.      Perrone Robotics, Inc. is a stock corporation organized and existing under the laws of Delaware, with its principal place of business located at 1000 Research Park Boulevard, Suite 106, Charlottesville, Virginia 22911. Perrone Robotics, Inc. owns 100% of the equity interests of Perrone Robotics Innovations, LLC.

2.      Perrone Robotics Innovations, LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at 1000 Research Park Boulevard, Suite 106, Charlottesville, Virginia 22911. Perrone Robotics, Inc. and Perrone Robotics Innovations, LLC (collectively, "Perrone Robotics") own all right, title, and interest in

the Patents-in-Suit, including the right to assert all causes of action under the Patents-in-Suit and the right to any remedies for the infringement of the Patents-in-Suit.

3.    Toyota Motor Corporation is a corporation organized and existing under the laws of Japan with its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan. Upon information and belief, Toyota Motor Corporation is the parent corporation of Toyota Motor North America, Inc. Toyota Motor Corporation, through its various entities, designs, manufactures, markets, distributes and sells Toyota and Lexus automobiles in Texas and this District and multiple other locations in the United States and worldwide.

4.    Toyota Motor North America, Inc. is a corporation organized and existing under the laws of California. On information and belief, Toyota Motor North America, Inc. maintains a regular and established place of business in this judicial district, including its headquarters located at 6565 Headquarters Drive, Plano, TX, 75024. Upon information and belief, Toyota Motor North America, Inc. is a wholly owned subsidiary of Toyota Motor Corporation and imports, manufactures, markets, distributes and sells Toyota and Lexus brand automobiles to dealers in the United States, including in Texas and this District. Toyota Motor North America, Inc. may be served through its registered agent for process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

Jurisdiction and Venue

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

6.    This Court has personal jurisdiction over the Toyota Defendants because the Toyota Defendants have had minimum contacts with Texas such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. In particular, the Toyota Defendants

have committed acts of infringement in violation of 35 U.S.C. § 271 in this District and have placed Infringing Products[1] into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such products will be used and sold in Texas and this District, including at the Toyota Defendants' numerous dealerships within Texas and this District. These acts caused and continue to cause injury to Perrone Robotics within Texas and this District. The Toyota Defendants derive substantial resources from the sale of Infringing Products distributed within Texas and this District, derive substantial revenue from interstate and international commerce, and expect or should reasonably expect their actions to have consequences within Texas and this District.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

8.      The Toyota Defendants have committed acts of infringement in this District by making, using, offering for sale, selling, and/or importing products or services that infringe the Patents-in-Suit, or by inducing others to infringe the Patents-in-Suit. The Toyota Defendants have regular and established places of business in this District. By way of example, Toyota Motor North America, Inc.'s headquarters is located in Plano, Texas. The Toyota Defendants also offer for sale or make available for sale infringing vehicles at numerous Toyota and Lexus dealerships in this District.

9.      Toyota Motor North America, Inc. is registered to do business in Texas. Its registered agent is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

---

[1] Exhibit F contains a preliminary list of the Toyota Defendants' "Infringing Products," which Perrone Robotics will update and revise based on discovery in this case.

10.     The Toyota Defendants derive benefits from their presence in this federal judicial District, including, but not limited to, sales revenue from the sale of Toyota and Lexus vehicles in this District.

The Patents-in-Suit

11.     On December 31, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,181,877 ("the '877 Patent") titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. Perrone Robotics owns and holds all rights, title and interest in and to the '877 Patent. A copy of the '877 Patent is attached as Exhibit A.

12.     On October 10, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,782,442 ("the '442 Patent") titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. Perrone Robotics owns and holds all rights, title and interest in and to the '442 Patent. A copy of the '442 Patent is attached as Exhibit B.

13.     On April 26, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,314,251 ("the '251 Patent") titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. Perrone Robotics owns and holds all rights, title and interest in and to the '251 Patent. A copy of the '251 Patent is attached as Exhibit C.

14.     On December 5, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,833,901 ("the '901 Patent") titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics,

Inc. Perrone Robotics owns and holds all rights, title and interest in and to the '901 Patent. A copy of the '901 Patent is attached as Exhibit D.

15.     On November 24, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,195,233 ("the '233 Patent"), titled "General Purpose Robotics Operating System" to Perrone Robotics, Inc. Perrone Robotics owns and holds all rights, title and interest in and to the '233 Patent. A copy of the '233 Patent is attached as Exhibit E.

<u>Factual Allegations</u>

***Perrone Robotics' Technology***

16.     Paul Perrone, the founder and CEO of Perrone Robotics, Inc., is a computer engineer and pioneer in the automated driving space. Perrone is the sole inventor of each of the Patents-in-Suit.

17.     In 2003, Perrone and his company Perrone Robotics, Inc. began working on automated devices and robots. The problem he identified was that every time a manufacturer wanted to make a robot or automated device, the manufacturer started from scratch and created specific hardware and software for the specific robot or automated device. This was inefficient and inhibited the ability to mass produce robots and automated devices.

18.     To solve this problem, Perrone came up with the novel idea of a general purpose robotics operating system ("GPROS") with application services that could be used across robots and automated devices and that could be configured to the specific robot or automated device. Today, such GPROSs are in existence, but at the time of Perrone's invention, they were unheard of. Perrone's invention of a GPROS with configurable applications is embodied in Perrone Robotics, Inc.'s full-stack robotic and automated software platform, MAX.

19.     In 2005, Perrone Robotics, Inc. entered the DARPA Grand Challenge, a race across the Mojave desert with a $2 million prize for anyone who could build a driverless vehicle that could complete the 100+ mile desert journey. Perrone Robotics, Inc.'s vehicle, Tommy, was one of the small number of applicants accepted as a semifinalist to enter the race. Tommy relied on Perrone Robotics, Inc.'s MAX platform. Perrone's understanding of the state of the industry was reinforced as he observed during the 2005 DARPA Grand Challenge that the other entrants were building specific hardware and software for the specific vehicle and that they were not relying on a GPROS that could be used across multiple vehicles.

20.     In February 2006, Perrone Robotics, Inc. filed for what became the '233 Patent to protect its foundational intellectual property related to using a GPROS in robots and automated devices, as embodied in Perrone Robotics, Inc.'s software platform, MAX. Perrone Robotics, Inc. subsequently filed the other four Patents-in-Suit.

21.     The inventions claimed in the Patents-in-Suit represent a significant technological advancement over the prior art robotics architectures. Previously, when someone wanted to build a robot or automated device, they had to create specific hardware and software for the robot or automated device. These rigid, vertically integrated control systems where application software was tied to specific hardware configurations were inefficient and prevented widespread deployment of robotic and automated devices. This conventional approach generally required developers to write custom, hardware-specific code for every new sensor, actuator, or mobility platform, or hard-coded configurations, algorithms, and behaviors, creating a technical barrier to interoperability and scalability. The Patents-in-Suit solve this specific computing problem through the non-conventional architecture of the GPROS, which introduces a novel layer of generic abstractions and dynamic configuration services that were neither well-understood nor routine in

the field. The resulting GPROS could be deployed across different robots and automated devices and used with different sensors and hardware, with varying communication protocols, and with configurable algorithms for robotics and automation control. The solution of using a GPROS was not well-understood, routine, or conventional at the time of the invention.

22.     The Patents-in-Suit also solved a significant technological problem in the prior art by describing application services that are "(i) completely configurable by using a config service, (ii) can be adapted both statically and dynamically, and (iii) provides access to configuration data using a generic abstraction." '233 Pat. Col. 41 ll. 53–57. The configurability of the application services and the ability to access configuration data were critical to solving the problem of being able to deploy the GPROS across different devices and with different sensors and hardware. The concepts set forth in this claim element were not well-understood, routine, or conventional at the time of the invention in the field of robotics and automation. Similarly, application services that can be "adapted both statically and dynamically" represent an important technological leap forward. This dual-mode adaptability is not merely a refinement of conventional configuration techniques; it represents a sophisticated solution to the technical problem of allowing modifications to robotic and automated systems. This sophisticated level of adaptability, operating in concert with a GPROS, was not well-understood or routine in the robotics field at the time of invention, particularly not as a deployable feature applicable across multiple hardware platforms.

23.     The claim elements of the Patents-in-Suit related to a GPROS with configurable application services, separately, and in combination with the other claim elements, solved the problem that existed in the prior art that to create a robot or automated device, a manufacturer had to create hardware and software for the specific device. This solution was not well-understood, routine, or conventional at the time. Since the invention, automakers have relied on the patented

technology to facilitate deployment of fleets of automated vehicles, which was not possible and was not done before the invention of the Patents-in-Suit.

24.     The Patents-in-Suit, which generally describe a GPROS to manage an autonomous vehicle service, also address the significant problem in the prior art of needing to build specific hardware and software for each vehicle. The Patents-in-Suit generally describe a method of using a GPROS with configurable application services and other claim elements to achieve an autonomous vehicle service or autonomous movement planning service. These concepts were not previously well-understood, routine, or conventional in the field of robotics and automation.

25.     The invention of the Patents-in-Suit also provides a technical solution to the long-standing robotics challenge of hardware heterogeneity through a hardware-independent abstraction layer that manages services across disparate platforms. Notably, the Patents-in-Suit do not simply provide static hardware abstraction; rather, they integrate "a service to manage synchronous, asynchronous, and real time application threads." This inventive thread management system solves a concrete technical problem inherent to robotics: the need to coordinate sensor processing, decision-making, and actuator control across hardware platforms.

26.     The Patents-in-Suit also disclose a fusion service that implements an unconventional solution to the technical problem of integrating multiple sensors in real-time systems. This approach was not well-understood, routine, or conventional because it achieves hardware independence while maintaining the tight timing requirements of real-time vehicle control—a technical problem that prior-art systems solved through hardware-specific, non-portable implementations rather than through the disclosed invention.

27.     The Patents-in-Suit also claim updating a set of application services with downloaded software from a network, enabling modification of control logic without physical

intervention. This capability represents a non-routine and non-conventional technical achievement in safety-critical systems. Traditional control systems employ tightly integrated, statically-compiled firmware that requires factory recalls, service center visits, and extensive re-certification for modifications—particularly for safety-critical functions like steering, braking, and throttle control. The claimed ability to push application service updates, including over-the-air, while preserving the integrity of real-time thread management, maintaining hardware platform independence, and ensuring coordinated multi-actuator control represents a fundamentally different and non-conventional approach. This dynamic reconfiguration capability enables in certain embodiments, rapid deployment of new algorithms, updated sensor parameters, modified planning logic, and corrected control behaviors—a technical advance that was not well-understood or routine in the automated vehicle industry.

28.     The Patents-in-Suit also claim a GPROS comprising a suite of configurable application services to enable composition of rich and complex robotic and automation applications with peripherals such as sensors and actuators in a hardware independent fashion. GPROSs specifically addressed the shortcomings of the prior art and provided a path and means for creating rich and complex robotics and automation applications. The prior art generally relied upon hard-coded configurations, brittle and non-configurable algorithms and behaviors, and hard-coded binding to specific sensors and actuation methods, which prevented the complex robotics and automation applications that GPROSs facilitated.

***The Toyota Defendants' Infringement***

29.     Much has changed since 2006 when Perrone Robotics Inc. filed its original patent application, which became the '233 Patent. Consumer demand and regulatory agencies have pushed automakers like the Toyota Defendants to provide more automated features in their

vehicles, which, among other benefits, increase safety and driver convenience. For instance, in May 2024, the National Highway Traffic Safety Administration finalized a rule that would require automakers to include automatic emergency braking in all their new cars and light trucks by 2029.

30.    To facilitate deployment of automated vehicle features across their fleets, automakers like the Toyota Defendants rely on the use of a GPROS with configurable applications, the very technology that is described in Perrone Robotics' foundational patents. On information and belief, the Toyota Defendants have relied on GPROSs that include a proprietary operating system, Arene[2]; Blackberry QNX[3]; AUTOSAR,[4] and ROS.[5] On information and belief, the Toyota Defendants have used these operating systems in combination with application services and sensors to facilitate automated vehicle features.

31.    The Toyota Defendants offer their automated vehicle features through their Toyota Safety Sense[6] programs, which the Toyota Defendants have promoted as "a suite of active safety technologies and advanced driver assistance systems,"[7] with the Toyota Defendants' website touting it as "Active Safety Technology."[8]

---

[2] https://woven.toyota/en/our-latest/20250521/

[3] https://www.blackberry.com/content/dam/blackberry-com/Documents/pdf/financial-reports/2021/q4y2021/q4-fy21-transcript.pdf; https://finance.yahoo.com/news/blackberrys-software-gains-prominence-auto-145602970.html

[4] https://www.autosar.org/about/partners/core-partner

[5] https://global.toyota/en/detail/13632724

[6] On information and belief, during the past six years, all vehicles using any Toyota Safety Sense version infringe the Patents-in-Suit, which include Toyota Safety Sense-C, Toyota Safety Sense-P, Toyota Safety Sense 2.0, Toyota Safety Sense 2.5/2.5+, and Toyota Safety Sense 3.0. In this complaint, references to "Toyota Safety Sense" refer to all versions of Toyota Safety Sense implemented in vehicles made, sold, used, imported, or offered for sale, during the past six years. The specific descriptions of Toyota Safety Sense below are exemplary and may not apply to all versions of Toyota Safety Sense. The Infringing Products (identified preliminarily in Exhibit F) have varying option levels for Toyota Safety Sense.

[7] https://www.toyota.com/content/dam/toyota/brochures/pdf/tss/CFA_TSS_3.pdf

[8] https://www.toyota.com/safety-sense/



32.     The Toyota Defendants also describe Toyota Safety Sense in promotional videos as "a suite of active safety technologies and advanced driver assistance systems designed to help address three key areas of accident protection: preventing or mitigating frontal collisions, keeping drivers within their lane, and enhancing road safety during nighttime driving."[9]

33.     Toyota Safety Sense versions have relied on various Advanced Driver-Assistance System ("ADAS") vehicle applications, including (1) Pre-Collision System, which is "designed to detect a vehicle or a pedestrian in either daytime or low-light situations, as well as daytime detection of a bicyclist" and then "provide audible and visual alerts, and automatic braking in certain conditions" to mitigate collisions; (2) Lane Tracing Assist, which is "designed to help keep the vehicle centered in its visibly marked lane and preemptively avoid unintended lane departures while cruising" by making "constant steering inputs to help keep the vehicle centered in its lane" if needed; and (3) Dynamic Radar Cruise Control, which is "designed to help detect slower preceding vehicles and automatically adjust the vehicle's speed to help maintain a preset distance behind the vehicle ahead."[10]

---

[9] https://www.youtube.com/watch?v=tdOJ8wa4YdI&t=130s
[10] https://www.toyota.com/content/dam/toyota/brochures/pdf/tss/CFA_TSS_2-5.pdf





**LANE TRACING ASSIST (LTA)**

LTA[7] operates automatically when **both Full-Speed Range Dynamic Radar Cruise Control[4] and Lane Departure Alert[3] are active**. It is designed to help keep the vehicle centered in its visibly marked lane and preemptively avoid unintended lane departures while cruising.

LTA monitors lane markings, as well as the path of the vehicle ahead, if needed and is designed to automatically make **constant steering inputs to help keep the vehicle centered** in its lane.

**PRE-COLLISION SYSTEM (PCS)**

PCS[2] is designed to detect a **vehicle or a pedestrian in either daytime or low-light situations**, as well as **daytime detection of a bicyclist**. When a potential hazard is detected, it may provide **audible and visual alerts**, and **automatic braking** in certain conditions.



**DYNAMIC RADAR CRUISE CONTROL (DRCC)**

DRCC[6] is designed to help **detect slower preceding vehicles and automatically adjust the vehicle's speed** to help maintain a preset distance behind the vehicle ahead.

34.    The Toyota Defendants also feature in their marketing materials that Toyota Safety Sense was "designed to help protect you and your passengers from harm"[11] and functions by "utilizing a high-resolution camera and millimeter-wave radar to help keep occupants safe."[12]

35.    The Toyota Defendants also offer their ADAS vehicle features in Lexus vehicles through Lexus Safety System+. The Toyota Defendants say that they are "constantly looking out for the driver," which is "why every 2020 and newer Lexus model comes standard with Lexus Safety System+."[13] The Toyota Defendants promote Lexus Safety System+ on their Lexus website

---

[11] https://www.buyatoyota.com/gst/tools/toyota-safety-sense

[12] https://www.toyota.com/content/dam/toyota/brochures/pdf/tss/CFA_TSS_2-5.pdf

[13] https://www.lexus.com/safety

as "a suite of standard advanced safety equipment and convenience features designed to help in certain circumstances, from alerting you of a pedestrian to helping you maintain a preset speed and following distance from the vehicle ahead."[14] The suite includes pre-collision system with pedestrian detection, dynamic radar cruise control, and lane tracing assist:



36.     On their Lexus website, the Toyota Defendants tout that the "Lexus Safety System+, a comprehensive suite of active safety equipment and convenience features," is bringing the Toyota Defendants closer to "our ultimate vision: an accident-free world."[15]



---

[14] *Id.*

[15] *Id.*

Count 1 – Infringement of U.S. Patent No. 12,181,877

37.     Perrone Robotics incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

38.     On December 31, 2024, the United States Patent and Trademark Office duly and legally issued the '877 Patent titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. A copy of the '877 Patent is attached as Exhibit A.

39.     The '877 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

40.     Perrone Robotics owns all rights, title, and interest in and to the '877 Patent, including the right to assert all causes of action under the '877 Patent and the right to any remedies for the infringement of the '877 Patent.

41.     The '877 Patent is generally directed to a vehicle which includes a novel GPROS that enables robotics and automation applications by providing a standardized, full-service platform that is configurable to be used with various robotics and automation applications.

42.     For example, claim 1 of the '877 Patent recites:

1. A vehicle comprising:

a steering mechanism, a brake, and a throttle;

an operating system comprising a set of application services configured to manage at least one obstacle service of the vehicle, the vehicle configured to use a movement plan, wherein the set of application services is independent of an underlying hardware platform and is configurable to perform at least one communication task and at least one operational task, wherein the set of application services:

        is configurable using a configuration service,

        is configurable to be adapted both statically and dynamically, and

is configurable to access configuration data using a generic abstraction; and

a graphical user interface,

wherein the vehicle is adapted to receive the configuration data over a network, and

wherein the vehicle is adapted to avoid obstacles.

43.     The Toyota Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '877 Patent, including at least claim 1 in violation of 35 U.S.C. § 271(a) by their manufacture, use, sale, importation and/or offer for sale of Infringing Products, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. As detailed below, the Infringing Products (identified preliminarily in Exhibit F) meet every limitation of the relevant claims of the '877 Patent literally or under the doctrine of equivalents, including at least claim 1.

44.     By way of a non-limiting example, the Toyota Defendants' vehicles such as the Toyota RAV4 and the Lexus RX comprise vehicles, as required by claim 1.

45.     The Toyota Defendants' vehicles such as the Toyota RAV4 and the Lexus RX include a steering mechanism, a brake, and a throttle, as required by claim 1. By way of example, Lane Tracing Assist relies on a steering mechanism to keep the vehicle centered in the lane. As a further example, Dynamic Radar Cruise Control relies on a brake and throttle to increase or decrease speed.

46.     The Toyota Defendants' vehicles with Toyota Safety Sense and Lexus Safety System+ practice an operating system comprising a set of application services configured to manage at least one obstacle service of the vehicle, as required by claim 1. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have relied on GPROSs that include a proprietary operating system, Arene; Blackberry QNX; AUTOSAR; and ROS. Vehicles with Toyota Safety Sense and Lexus Safety System+ each include a set of application services that

manages at least one obstacle service of the vehicle, including Pre-Collision System, which comes standard in, for example, all 2025 Toyota RAV4s and in all Lexus RXs. Pre-Collision System automatically applies braking to avoid vehicles or pedestrians in the vehicle's path when the driver does not begin stopping in time.

47.    The Toyota Defendants' vehicles equipped with Toyota Safety Sense or Lexus Safety System+, including the Toyota RAV4 and the Lexus RX, are configured to use a movement plan, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ utilize a movement plan when using Lane Tracing Assist to move the steering wheel to keep the vehicle centered in a lane based on a movement plan.

48.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that are independent of an underlying hardware platform and are configurable to perform at least one communication task and at least one operational task, as required by claim 1. By way of example, Toyota Safety Sense is independent of the underlying platform and can be used across Toyota models, including the Toyota RAV4. Lexus Safety System+ is independent of the underlying platform and can be used across Lexus models, including the Lexus RX. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform operational tasks, including Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform communication tasks such as communication with the sensors and over-the-air software updates.

49.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that is configurable using a configuration service, is configurable to be adapted both statically and dynamically, and that is configurable to access configuration data using a generic abstraction, and that has a graphical user interface, as required by claim 1. By way of

16

example, vehicles with Toyota Safety Sense and Lexus Safety System+ allow for ADAS settings to be configured using a generic abstraction that is independent of any underlying hardware platform and can be used across devices. Toyota Safety Sense and Lexus Safety System+ calibrations are configurable to be adapted both statically and dynamically. By way of example, a driver can statically adjust ADAS settings at startup and can also dynamically adjust them as the vehicle is moving. As another example, the sensors undergo both static and dynamic calibration processes to ensure accurate functioning, with static calibration aligning the sensors in a controlled environment and dynamic calibration aligning the sensors while driving.

50.    The Toyota Defendants' vehicles equipped with Toyota Safety Sense or Lexus Safety System+, including the Toyota RAV4 and the Lexus RX, are adapted to receive configuration data over a network, as required by claim 1. By way of example, Toyota Safety Sense and Lexus Safety System+ both include an over-the-air software update.

51.    The Toyota Defendants' vehicles equipped with Toyota Safety Sense or Lexus Safety System+, including the Toyota RAV4 and the Lexus RX, are adapted to avoid obstacles. By way of example, Toyota Safety Sense and Lexus Safety System+ both include Pre-Collision System, which comes standard in all 2025 Toyota RAV4 models and in all 2025 Lexus RX models. Pre-Collision System automatically applies braking to avoid vehicles or pedestrians in the vehicle's path when the driver does not begin stopping in time.

52.    Further, at least as of the date of the Complaint, the Toyota Defendants have willfully infringed and continue to willfully infringe at least claim 1 of the '877 Patent because they knew about the patent and intentionally and deliberately chose to infringe it by making, using, selling, importing, and/or offering for sale vehicles such as those with Toyota Safety Sense that infringed the patent.

53.     Further, at least since being served with this Complaint, the Toyota Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '877 Patent. The Toyota Defendants actively induce infringement of the '877 Patent under 35 U.S.C. § 271(b). With specific intent to induce infringement, the Toyota Defendants knowingly induce their customers and dealers to use, sell, and offer for sale vehicles that they know or should know infringe one or more claims of the '877 Patent. The Toyota Defendants instruct their customers to use and instruct their vehicle dealers to sell and offer for sale vehicles containing the patented invention and specifically intend for those customers and dealers to infringe one or more claims of the '877 Patent by using, selling, and offering for sale infringing vehicles containing technology such as Toyota Safety Sense and Lexus Safety System+. Among other inducement actions, the Toyota Defendants' instructional, marketing, and sales materials inform customers and dealers about the use of Toyota Safety Sense and Lexus Safety System+ and tout the advantages of using Toyota Safety Sense and Lexus Safety System+.

54.     The Toyota Defendants' acts of infringement have caused and continue to cause damage to Perrone Robotics, and Perrone Robotics is entitled to recover from the Toyota Defendants the damages they have sustained as a result of the Toyota Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '877 Patent, together with interests and costs as fixed by the Court.

55.     The Toyota Defendants have had notice of the '877 Patent at least as of the date of this Complaint.

56.     At all times since the '877 Patent issued, Perrone Robotics has marked the patented articles it makes and offers for sale in the United States under 35 U.S.C. § 287 in a substantially

consistent and continuous manner. For example, since the '877 Patent's issuance, Perrone

Robotics, Inc. has included on its website a patent mark:

Perrone Robotics, Inc. Company Confidential. Copyright 2025. All rights reserved. TONY and MAX are patented in the U.S. (9,195,233, 9,833,901, 10,331,136, 10,379,007, 11,280,704, 11,314,251, 11,782,442, 12,181,877) and Canada (2643378). TONY and MAX have additional patents pending. MAX, Perrone Robotics, TONY, and "Mobility of People and Things" are registered trademarks of Perrone Robotics.

## Count 2 – Infringement of U.S. Patent No. 11,782,442

57.    Perrone Robotics incorporates by reference its allegations in the preceding

paragraphs as if fully restated in this paragraph.

58.    On October 10, 2023, the United States Patent and Trademark Office duly and

legally issued the '442 Patent titled "General Purpose Robotics Operating System with Unmanned

and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. A copy of the '442 Patent is

attached as Exhibit B.

59.    The '442 Patent is valid, enforceable, and was duly issued in full compliance with

Title 35 of the United States Code.

60.    Perrone Robotics owns all rights, title, and interest in and to the '442 Patent,

including the right to assert all causes of action under the '442 Patent and the right to any remedies

for the infringement of the '442 Patent.

61.    The '442 Patent is generally directed to a novel autonomous vehicle which includes

a GPROS that enables robotics and automation applications by providing a standardized, full-

service platform that is configurable to be used with various robotics and automation applications.

62.    For example, claim 8 of the '442 Patent recites:

8. An autonomous vehicle comprising:

a vehicle having a steering mechanism, a brake, and a throttle;

a general purpose robotics operating system comprising a set of application services
configured to manage at least one of synchronous, asynchronous, or real time
application threads, wherein the set of application services is independent of an

19

underlying hardware platform and is configurable to perform at least one of communication tasks and operational tasks;

a steering servomechanism configured to control the steering mechanism based on a movement plan;

a brake servomechanism configured to control the brake based on the movement plan; and

a throttle servomechanism configured to control the throttle based on the movement plan.

63.    The Toyota Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '442 Patent, including at least claim 8, in violation of 35 U.S.C. § 271(a) by their manufacture, use, sale, importation and/or offer for sale of Infringing Products, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. The Toyota Defendants have also directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, method claims in the '442 patent when they perform the methods by testing and using their own infringing vehicles, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. As detailed below, the Infringing Products (identified preliminarily in Exhibit F) meet every limitation of the relevant claims of the '442 Patent literally or under the doctrine of equivalents, including at least claim 8.

64.    By way of a non-limiting example, the Toyota Defendants have infringed claim 8 of the '442 Patent with Toyota vehicles such as the Toyota RAV4 that use Toyota Safety Sense and with Lexus vehicles such as Lexus RX that use Lexus Safety System+. Toyota Safety Sense is a standard feature in all 2025 Toyota RAV4 models. Lexus Safety System+ is a standard feature in all 2025 Lexus RX models.

65.    The Toyota Defendants' vehicles such as the Toyota RAV4 and the Lexus RX comprise autonomous vehicles, as required by claim 8. By way of example, Toyota Safety Sense

provides autonomous vehicle functions in vehicles such as the Toyota RAV4. Lexus Safety System+ provides autonomous vehicle functions in vehicles such as the Lexus RX.

66.     Autonomous vehicles such as the Toyota RAV4 and the Lexus RX have a steering mechanism, a brake, and a throttle, as required by claim 8. By way of example, Lane Tracing Assist relies on a steering mechanism to keep the vehicle centered in the lane. Dynamic Radar Cruise Control relies on a brake and throttle to increase or decrease speed.

67.     Autonomous vehicles such as the Toyota RAV4 and the Lexus RX are equipped with a GPROS comprising a set of application services, as required by claim 8. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have relied on GPROSs that include a proprietary operating system, Arene; Blackberry QNX; AUTOSAR; and ROS. By way of example, Blackberry QNX touts that it is a "A Flexible, Modular and Hardware-Optimized Approach to ADAS Safety" and explains that "With a wide range of hardware, a modular software framework designed to be sensor- and processor-agnostic means applications can be written once and reused on different hardware systems."[16]

68.     Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services configured to manage at least one of synchronous, asynchronous, or real time application threads, as required by claim 8. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have a service to manage multiple threads providing information from, for example, sensors. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ receive messages from certain synchronous, asynchronous, and real-time application threads and use the service to determine how to process and prioritize the information to make the ADAS applications function. As a non-limiting example, on information and belief,

---

[16] https://blackberry.qnx.com/en/products/automotive/qnx-adas

some versions of Toyota Safety Sense and Lexus Safety System+ have used Blackberry QNX Neutrino, which can be configured to manage synchronous, asynchronous, and real-time application threads. As QNX publicly documents, "[s]ynchronous messaging is the main form of [interprocess communication] in the QNX OS."[17] QNX also manages asynchronous threads, such as "pulses": "In addition to the synchronous Send/Receive/Reply services, the OS also supports fixed-size, nonblocking messages."[18] And QNX can manage real time application threads too, such as "POSIX realtime signals that may queue and pass data."[19]

69.     Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that are independent of an underlying hardware platform and are configurable to perform at least one of communication tasks and operational tasks, as required by claim 8. By way of example, Toyota Safety Sense is independent of the underlying platform and can be used across Toyota models, including the Toyota RAV4. Lexus Safety System+ is independent of the underlying platform and can be used across Lexus models, including the Lexus RX. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform operational tasks, including Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform communication tasks such as communication with the sensors and over-the-air software updates.

70.     Vehicles with Toyota Safety Sense and Lexus Safety System+ each practice a steering servomechanism configured to control the steering mechanism based on a movement plan, a brake servomechanism configured to control the brake based on the movement plan, and a throttle servomechanism configured to control the throttle based on the movement plan, as required

---

[17] https://www.qnx.com/developers/docs/8.0/com.qnx.doc.neutrino.sys_arch/topic/ipc_Sync_messaging.html

[18] https://www.qnx.com/developers/docs/8.0/com.qnx.doc.neutrino.sys_arch/topic/ipc_Pulses.html

[19] https://www.qnx.com/developers/docs/8.0/com.qnx.doc.neutrino.sys_arch/topic/ipc_Events.html

by claim 8. By way of example, Lane Tracing Assist relies on a steering servomechanism to keep the vehicle centered in the lane based on a movement plan. Dynamic Radar Cruise Control relies on a brake and throttle servomechanism to control the speed based on the movement plan.

71.    Further, at least as of the date of the Complaint, the Toyota Defendants have willfully infringed and continue to willfully infringe at least claim 8 of the '442 Patent because they knew about the patent and intentionally and deliberately chose to infringe it by making, using, selling, importing, and/or offering for sale vehicles such as those with Toyota Safety Sense that infringed the patent.

72.    Further, at least since being served with this Complaint, the Toyota Defendants have indirectly infringed and continue to indirectly infringe at least claim 8 of the '442 Patent. The Toyota Defendants actively induce infringement of the '442 Patent under 35 U.S.C. § 271(b). With specific intent to induce infringement, the Toyota Defendants knowingly induce their customers and dealers to use, sell, and offer for sale vehicles that they know or should know infringe one or more claims of the '442 Patent. The Toyota Defendants instruct their customers to use and instruct their vehicle dealers to sell and offer for sale vehicles containing the patented invention and specifically intend for those customers and dealers to infringe one or more claims of the '442 Patent by using, selling, and offering for sale vehicles containing infringing technology such as Toyota Safety Sense and Lexus Safety System+. Among other inducement actions, the Toyota Defendants' instructional, marketing, and sales materials inform customers and dealers about the use of Toyota Safety Sense and Lexus Safety System+ and tout the advantages of using Toyota Safety Sense and Lexus Safety System+.

73.    The Toyota Defendants' acts of infringement have caused and continue to cause damage to Perrone Robotics, and Perrone Robotics is entitled to recover from the Toyota

Defendants the damages they have sustained as a result of the Toyota Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '442 Patent, together with interests and costs as fixed by the Court.

74.     The Toyota Defendants have had notice of the '442 Patent at least as of the date of this Complaint.

75.     At all times since the '442 Patent issued, Perrone Robotics has marked the patented articles it makes and offers for sale in the United States under 35 U.S.C. § 287 in a substantially consistent and continuous manner. For example, since the '442 Patent's issuance, Perrone Robotics, Inc. has included on its website a patent mark:

Perrone Robotics, Inc. Copyright 2024. All rights reserved. TONY and MAX are patented in the U.S. (9,195,233, 9,833,901, 10,331,136, 10,379,007, 11,280,704, 11,314,251, 11,782,442) and Canada (2643378). TONY and MAX have additional patents pending. MAX, Perrone Robotics, TONY, and Mobility of People and Things are registered trademarks of Perrone Robotics.

## Count 3 – Infringement of U.S. Patent No. 11,314,251

76.     Perrone Robotics incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

77.     On April 26, 2022, the United States Patent and Trademark Office duly and legally issued the '251 Patent titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. A copy of the '251 Patent is attached as Exhibit C.

78.     The '251 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

79.     Perrone Robotics owns all rights, title, and interest in and to the '251 Patent, including the right to assert all causes of action under the '251 Patent and the right to any remedies for the infringement of the '251 Patent.

80.     The '251 Patent is generally directed to a novel autonomous vehicle which includes a GPROS that enables robotics and automation applications by providing a standardized, full-service platform that is configurable to be used with various robotics and automation applications.

81.     For example, claim 2 of the '251 Patent recites:

2. An autonomous vehicle comprising:

a vehicle having a steering mechanism, a brake, and a throttle, wherein the vehicle is equipped with a general purpose robotics operating system comprising a set of application services, wherein the set of application services comprises a service to manage synchronous, asynchronous, and real time application threads, wherein the application services are independent of an underlying hardware platform and are configurable to perform at least one of communication tasks and operational tasks, and wherein the set of application services

(i) is configurable using a configuration service,

(ii) is configurable to be adapted both statically and dynamically, and

(iii) is configurable to access configuration data using a generic abstraction;

a steering servomechanism connected to the vehicle and configured to control the steering mechanism based on a movement plan;

a brake servomechanism connected to the vehicle and configured to apply and release the brake based on the movement plan; and

a throttle servomechanism connected to the vehicle and configured to increase and decrease the throttle based on the movement plan.

82.     The Toyota Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '251 Patent, including at least claim 2, in violation of 35 U.S.C. § 271(a) by their manufacture, use, sale, importation and/or offer for sale of Infringing Products, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. The Toyota Defendants have also directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, method claims in the '251 patent when they perform the methods by testing and using their own infringing vehicles, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety

System+. As detailed below, the Infringing Products (identified preliminarily in Exhibit F) meet every limitation of the relevant claims of the '251 Patent literally or under the doctrine of equivalents, including at least claim 2.

83.    By way of a non-limiting example, the Toyota Defendants have infringed claim 2 of the '251 Patent with Toyota vehicles such as the Toyota RAV4 that use Toyota Safety Sense and with Lexus vehicles such as the Lexus RX that use Lexus Safety System+. Toyota Safety Sense is a standard feature in all 2025 Toyota RAV4 models. Lexus Safety System+ is a standard feature in all 2025 Lexus RX models.

84.    The Toyota Defendants' vehicles such as the Toyota RAV4 and the Lexus RX comprise autonomous vehicles, as required by claim 2. By way of example, Toyota Safety Sense provides autonomous vehicle functions in vehicles such as the Toyota RAV4. Lexus Safety System+ provides autonomous vehicle functions in vehicles such as the Lexus RX.

85.    Autonomous vehicles such as the Toyota RAV4 and Lexus RX have a steering mechanism, a brake, and a throttle, as required by claim 2. By way of example, Lane Tracing Assist relies on a steering mechanism to keep the vehicle centered in the lane. Dynamic Radar Cruise Control relies on a brake and throttle servomechanism to increase or decrease speed.

86.    Autonomous vehicles such as the Toyota RAV4 and the Lexus RX are equipped with a GPROS comprising a set of application services, as required by claim 2. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have relied on GPROSs that include a proprietary operating system, Arene; Blackberry QNX; AUTOSAR; and ROS. By way of example, Blackberry QNX touts that it is a "A Flexible, Modular and Hardware-Optimized Approach to ADAS Safety" and explains that "With a wide range of hardware, a modular software

framework designed to be sensor- and processor-agnostic means applications can be written once and reused on different hardware systems."

87.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that comprises a service to manage synchronous, asynchronous, and real time application threads, as required by claim 2. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have a service to manage multiple threads providing information from, for example, sensors. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ receive messages from certain synchronous, asynchronous, and real-time application threads and use the service to determine how to process and prioritize the information to make the ADAS applications function. As a non-limiting example, on information and belief, some versions of Toyota Safety Sense and Lexus Safety System+ have used Blackberry QNX Neutrino, which can be configured to manage synchronous, asynchronous, and real-time application threads. As QNX publicly documents, "[s]ynchronous messaging is the main form of [interprocess communication] in the QNX OS." QNX also manages asynchronous threads, such as "pulses": "In addition to the synchronous Send/Receive/Reply services, the OS also supports fixed-size, nonblocking messages." And QNX can manage real time application threads too, such as "POSIX realtime signals that may queue and pass data."

88.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that are independent of an underlying hardware platform and are configurable to perform at least one of communication tasks and operational tasks, as required by claim 2. By way of example, Toyota Safety Sense is independent of the underlying platform and can be used across Toyota models, including the Toyota RAV4. Lexus Safety System+ is independent of the underlying platform and can be used across Lexus models, including the Lexus RX. Vehicles with

Toyota Safety Sense and Lexus Safety System+ perform operational tasks, including Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform communication tasks such as communication with the sensors and over-the-air software updates.

89.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that is configurable using a configuration service, configurable to be adapted both statically and dynamically, and configurable to access configuration data using a generic abstraction, as required by claim 2. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ allow for ADAS settings to be configured using a generic abstraction that is independent of any underlying hardware platform and can be used across devices. Toyota Safety Sense and Lexus Safety System+ calibrations are performed both statically and dynamically. By way of example, a driver can statically adjust ADAS settings at startup and can also dynamically adjust them as the vehicle is moving. As another example, the sensors undergo both static and dynamic calibration processes to ensure accurate functioning, with static calibration aligning the sensors in a controlled environment and dynamic calibration aligning the sensors while driving.

90.    Vehicles with Toyota Safety Sense and Lexus Safety System+ each practice a steering servomechanism connected to the vehicle and configured to control the steering mechanism based on a movement plan, a brake servomechanism connected to the vehicle and configured to apply and release the brake based on the movement plan, and a throttle servomechanism connected to the vehicle and configured to increase and decrease the throttle based on the movement plan, as required by claim 2. By way of example, Lane Tracing Assist relies on a steering servomechanism to keep the vehicle centered in the lane based on a movement plan. Pre-Collision System relies on a brake servomechanism to decrease speed based on the

movement plan to help reduce effects of possible collisions. Dynamic Radar Cruise Control relies on a throttle servomechanism configured to increase and decrease the throttle based on the movement plan.

91.    Further, at least as of the date of the Complaint, the Toyota Defendants have willfully infringed and continue to willfully infringe at least claim 2 of the '251 Patent because they knew about the patent and intentionally and deliberately chose to infringe it by making, using, selling, importing, and/or offering for sale vehicles such as those with Toyota Safety Sense that infringed the patent.

92.    Further, at least since being served with this Complaint, the Toyota Defendants have indirectly infringed and continue to indirectly infringe at least claim 2 of the '251 Patent. The Toyota Defendants actively induce infringement of the '251 Patent under 35 U.S.C. § 271(b). With specific intent to induce infringement, the Toyota Defendants knowingly induce their customers and dealers to use, sell, and offer for sale vehicles that they know or should know infringe one or more claims of the '251 Patent. The Toyota Defendants instruct their customers to use and instruct their vehicle dealers to sell and offer for sale vehicles containing the patented invention and specifically intend for those customers and dealers to infringe one or more claims of the '251 Patent by using, selling, and offering for sale vehicles containing infringing technology such as Toyota Safety Sense and Lexus Safety System+. Among other inducement actions, the Toyota Defendants' instructional, marketing, and sales materials inform customers and dealers about the use of Toyota Safety Sense and Lexus Safety System+ and tout the advantages of using Toyota Safety Sense and Lexus Safety System+.

93.    The Toyota Defendants' acts of infringement have caused and continue to cause damage to Perrone Robotics, and Perrone Robotics is entitled to recover from the Toyota

Defendants the damages they have sustained as a result of the Toyota Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '251 Patent, together with interests and costs as fixed by the Court.

94.    The Toyota Defendants have had notice of the '251 Patent at least as of the date of this Complaint.

95.    At all times since the '251 Patent issued, Perrone Robotics has marked the patented articles it makes and offers for sale in the United States under 35 U.S.C. § 287 in a substantially consistent and continuous manner, including by marking the patent on the MAX software's info file.

96.    Likewise, since the '251 Patent's issuance, Perrone Robotics, Inc. has included on its website a patent mark:

Copyright 2022. Perrone Robotics, Inc. All rights reserved. MAX is patented in the U.S. (9,195,233, 9,833,901, 10,331,136, 10,379,007, 11,280,704, 11,314,251). MAX is patent pending internationally. MAX, Perrone Robotics, & TONY are trademarks of Perrone Robotics.

### Count 4 – Infringement of U.S. Patent No. 9,833,901

97.    Perrone Robotics incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

98.    On December 5, 2017, the United States Patent and Trademark Office duly and legally issued the '901 Patent titled "General Purpose Robotics Operating System with Unmanned and Autonomous Vehicle Extensions" to Perrone Robotics, Inc. A copy of the '901 Patent is attached as Exhibit D.

99.    The '901 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

100.    Perrone Robotics owns all rights, title, and interest in and to the '901 Patent, including the right to assert all causes of action under the '901 Patent and the right to any remedies for the infringement of the '901 Patent.

101.    The '901 Patent is generally directed to a novel GPROS which enables robotics and automation applications by providing a standardized, full-service platform that is configurable to be used with various robotics and automation applications.

102.    For example, claim 1 of the '901 Patent recites:

1. A method

in a general purpose robotics operating system (GPROS) comprising a set of application services, executed using a computing device comprising a processor, the method comprising:

managing synchronous, asynchronous, and real time application threads using at least one of the application services; and

managing at least one of an autonomous vehicle service and an autonomous movement planning service using at least one of the application services,

wherein the set of application services:

(i) is configurable using a configuration service,

(ii) is configurable to be adapted both statically and dynamically, and

(iii) is configurable to access configuration data using a generic abstraction, and

wherein the application services are independent of an underlying hardware platform and are configurable to perform at least one of communication tasks and operational tasks.

103.    The Toyota Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '901 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by their manufacture, use, sale, importation and/or offer for sale of Infringing Products, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. The Toyota Defendants have also directly infringed

and continue to directly infringe, literally and/or under the doctrine of equivalents, method claims in the '901 patent, including at least claim 1, when they perform the methods by testing and using their own infringing vehicles, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. As detailed below, the Infringing Products (identified preliminarily in Exhibit F) meet every limitation of the relevant claims of the '901 Patent literally or under the doctrine of equivalents, including at least claim 1.

104. By way of a non-limiting example, the Toyota Defendants have infringed claim 1 of the '901 Patent with Toyota vehicles such as the Toyota RAV4 that use Toyota Safety Sense and with Lexus vehicles such as the Lexus RX that use Lexus Safety System+. Toyota Safety Sense is a standard feature in all 2025 Toyota RAV4 models. Lexus Safety System+ is a standard feature in all 2025 Lexus RX models. The Toyota Defendants perform the method identified in claim 1 of the '901 Patent and in the other infringed method claims of the '901 Patent when they test and use their own infringing vehicles, including vehicles such as the Toyota RAV4 that use Toyota Safety Sense and with Lexus vehicles such as the Lexus RX that use Lexus Safety System+.

105. Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a method in a GPROS comprising a set of application services, executed using a computing device comprising a processor, as required by claim 1. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have relied on GPROSs that include a proprietary operating system, Arene; Blackberry QNX; AUTOSAR; and ROS. Toyota Safety Sense and Lexus Safety System+ are executed by using a computing device (*e.g.*, an Electronic Control Unit or ECU) that comprises a processor (*e.g.*, microcontrollers and microprocessors).

106. Vehicles with Toyota Safety Sense and Lexus Safety System+ practice managing synchronous, asynchronous, and real time application threads using at least one of the application

services, as required by claim 1. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have a service to manage multiple threads providing information from, for example, sensors. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ receive messages from certain synchronous, asynchronous, and real-time application threads and use the service to determine how to process and prioritize the information to make the ADAS applications function. As a non-limiting example, on information and belief, some versions of Toyota Safety Sense and Lexus Safety System+ have used Blackberry QNX Neutrino, which can be configured to manage synchronous, asynchronous, and real-time application threads. As QNX publicly documents, "[s]ynchronous messaging is the main form of [interprocess communication] in the QNX OS." QNX also manages asynchronous threads, such as "pulses": "In addition to the synchronous Send/Receive/Reply services, the OS also supports fixed-size, nonblocking messages." And QNX can manage real time application threads too, such as "POSIX realtime signals that may queue and pass data."

107.    Vehicles with Toyota Safety Sense and Lexus Safety System+ each practice managing at least one of an autonomous vehicle service and an autonomous movement planning service using at least one of the application services, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ use an autonomous movement planning service when using Lane Tracing Assist to move the steering wheel to keep the vehicle centered in a lane based on a movement plan. Vehicles with Toyota Safety Sense and Lexus Safety System+ also use an autonomous movement planning service when using Pre-Collision System to avoid collisions based on a movement plan.

108.    Vehicles with Toyota Safety Sense and Lexus Safety System+ have a set of application services that are configurable using a configuration service, are configurable to be

adapted both statically and dynamically, and are configurable to access configuration data using a generic abstraction, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ allow for ADAS settings to be configured using a generic abstraction that is independent of any underlying hardware platform and can be used across devices. By way of example, a driver can statically adjust ADAS settings at startup and can also dynamically adjust them as the vehicle is moving. As another example, the sensors undergo both static and dynamic calibration processes to ensure accurate functioning, with static calibration aligning the sensors in a controlled environment and dynamic calibration aligning the sensors while driving.

109.    Vehicles with Toyota Safety Sense and Lexus Safety System+ each practice a set of application services that are independent of an underlying hardware platform and are configurable to perform at least one of communications tasks and operational tasks. By way of example, Toyota Safety Sense is independent of the underlying platform and can be used across Toyota models, including the Toyota RAV4. Lexus Safety System+ is independent of the underlying platform and can be used across Lexus models, including the Lexus RX. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform operational tasks, including Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform communication tasks such as communication with the sensors and over-the-air software updates.

110.    Further, since mid-2018 or at least since the date of the Complaint, the Toyota Defendants have willfully infringed and continue to willfully infringe at least claim 1 of the '901 Patent. In May 2018, Paul Perrone met with representatives of the Toyota Defendants at the Intel Capital Global Summit. Later that month, Perrone sent Toyota representatives a pitch deck and technology decks for MAX and Perrone Robotics, Inc. These pitch decks referenced Perrone

Robotics, Inc.'s '233 Patent, and by mid-2018, Perrone Robotics, Inc.'s website identified both the '901 Patent and the '233 Patent. The Toyota Defendants then asked for a follow-up call in June 2018. In July 2018, the Toyota Defendants declined to invest in Perrone Robotics, Inc.'s technology. The Toyota Defendants informed Paul Perrone that they were using ROS as their operating system for ADAS and did not intend to switch to Perrone Robotics' MAX product at that time.

111.    In December 2019, a member of the Toyota Defendants' Automated Driving & Advanced Safety System Development Division reached out to Paul Perrone and asked him for a private meeting at the CES 2020 conference. The Toyota Defendants sent a detailed agenda for the proposed meeting, requesting information about technical details such as: "Target performance (speed, area, etc.)," "Safety technology and comfortability (including tuning)," "Sensor(sensor type, supplier, mounting, etc.)," "HD map," and "Infrastructure coordination." The Toyota Defendants also wanted to discuss Perrone Robotics, Inc.'s business model and targets, the planned development structure, partnerships with other companies, and how to generate profit from Perrone Robotics' patented technology. At the time, Perrone Robotics, Inc.'s website listed both the '901 and '233 Patents.

112.    Instead of licensing the patented invention from Perrone Robotics, the Toyota Defendants decided to intentionally infringe the '901 Patent. The Toyota Defendants had multiple meetings with Perrone Robotics where they learned about Perrone Robotics' patented technology. Despite knowing that Perrone Robotics had patented this technology, the Toyota Defendants set out to rely on the technology in their vehicles, including those vehicles that have had Toyota Safety Sense and Lexus Safety System+. By making, using, selling, importing, and/or offering for sale

vehicles that they knew infringed one or more claims of the '901 Patent, the Toyota Defendants intentionally and deliberately infringed the '901 Patent, and are liable for willful infringement.

113.    Further, at least since being served with this Complaint and on information and belief at times after the mid-2018 discussions with Perrone referenced above, the Toyota Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '901 Patent. The Toyota Defendants actively induce infringement of the '901 Patent under 35 U.S.C. § 271(b). With specific intent to induce infringement, the Toyota Defendants knowingly induce their customers and dealers to use, sell, and offer for sale vehicles that they know or should know infringe one or more claims of the '901 Patent. The Toyota Defendants instruct their customers to use and instruct their vehicle dealers to sell and offer for sale vehicles containing the patented invention and specifically intend for those customers and dealers to infringe one or more claims of the '901 Patent by using, selling, and offering for sale vehicles containing infringing technology such as Toyota Safety Sense and Lexus Safety System+. Among other inducement actions, the Toyota Defendants' instructional, marketing, and sales materials inform customers and dealers about the use of Toyota Safety Sense and Lexus Safety System+ and tout the advantages of using Toyota Safety Sense and Lexus Safety System+.

114.    The Toyota Defendants' acts of infringement have caused and continue to cause damage to Perrone Robotics, and Perrone Robotics is entitled to recover from the Toyota Defendants the damages they have sustained as a result of the Toyota Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '901 Patent, together with interests and costs as fixed by the Court.

115.    The Toyota Defendants have had notice of the '901 Patent at least as of mid-2018.

116.    At all times since the '901 Patent issued, Perrone Robotics has marked the patented articles it makes and offers for sale in the United States under 35 U.S.C. § 287 in a substantially consistent and continuous manner, including by marking the patent on the MAX software's info file.

117.    Likewise, since the '901 Patent's issuance, Perrone Robotics, Inc. has included on its website a patent mark:

© 2018 Perrone Robotics. All rights reserved. Perrone Robotics and MAX are registered trademarks of Perrone Robotics, Inc. MAX is patented in the U.S. (9,195,233, 9,833,901). MAX is patent pending internationally. AVTS, the DAK, and TRV are patent pending.

### Count 5 – Infringement of U.S. Patent No. 9,195,233

118.    Perrone Robotics incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

119.    On November 24, 2015, the United States Patent and Trademark Office duly and legally issued the '233 Patent titled "General Purpose Robotics Operating System" to Perrone Robotics, Inc. A true and correct copy of the '233 Patent is attached as Exhibit E.

120.    The '233 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

121.    Perrone Robotics owns all rights, title, and interest in and to the '233 Patent, including the right to assert all causes of action under the '233 Patent and the right to any remedies for the infringement of the '233 Patent.

122.    The '233 Patent is generally directed to a novel GPROS, which enables robotics and automation applications by providing a standardized, full-service platform that is configurable to be used with various robotics and automation applications.

123.    For example, claim 1 of the '233 Patent recites:

1. A non-transitory medium encoding a general purpose robotics operating system, an automation operating system, or both a general purpose robotics operating systems and an automation operating system (GPROS), wherein the GPROS comprises:

a set of application services, the set of application services comprising at least one of robotics application services, automation application services, or both robotics and automation application services,

wherein the set of application services (i) is completely configurable by using a config service, (ii) can be adapted both statically and dynamically, and (iii) provides access to configuration data using a generic abstraction,

wherein the set of application services are independent of an underlying hardware platform and allow for combinations of communication, operational, or both communication and operational conduct for communication, operational, or both communication and operational tasks, and

wherein the set of application services comprises (1) a peripheral service, and (2) a sensor service, an actuator service, or both a sensor service and an actuator service, and wherein

the set of application services comprises a service to manage synchronous, asynchronous, and real time application threads.

124. The Toyota Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '233 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by their manufacture, use, sale, importation and/or offer for sale of Infringing Products, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. The Toyota Defendants have also directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, method claims in the '233 patent when they perform the methods by testing and using their own infringing vehicles, including but not limited to vehicles that include Toyota Safety Sense or Lexus Safety System+. As detailed below, the Infringing Products (identified preliminarily in Exhibit F) meet every limitation of the relevant claims of the '233 Patent literally or under the doctrine of equivalents, including at least claim 1.

125.    By way of a non-limiting example, the Toyota Defendants have infringed the '233 Patent with Toyota vehicles such as the Toyota RAV4 that use Toyota Safety Sense and with Lexus vehicles such as the Lexus RX that use Lexus Safety System+. Toyota Safety Sense is a standard feature in all 2025 Toyota RAV4 models. Lexus Safety System+ is a standard feature in all 2025 Lexus RX models.

126.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a non-transitory medium encoding a GPROS, an automation operating system, or both a GPROS and an automation operating system, as required by claim 1. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have relied on GPROSs that include a proprietary operating system, Arene; Blackberry QNX; AUTOSAR; and ROS. By way of example, Blackberry QNX touts that it is a "A Flexible, Modular and Hardware-Optimized Approach to ADAS Safety" and explains that "With a wide range of hardware, a modular software framework designed to be sensor- and processor-agnostic means applications can be written once and reused on different hardware systems."

127.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services, the set of application services comprising at least one of robotics application services, automation application services, or both robotics and automation application services, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of automation application services such as Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist are standard features in 2025 Toyota RAV4 models and in 2025 Lexus RX models.

128.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of applications that is completely configurable by using a config service, can be adapted both statically and dynamically, and provides access to configuration data using a generic abstraction, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ allow for ADAS settings to be configured using a generic abstraction that is independent of any underlying hardware platform and can be used across devices. Toyota Safety Sense and Lexus Safety System+ calibrations are performed both statically and dynamically. By way of example, a driver can statically adjust ADAS settings at startup and can also dynamically adjust them as the vehicle is moving. As another example, the sensors undergo both static and dynamic calibration processes to ensure accurate functioning, with static calibration aligning the sensors in a controlled environment and dynamic calibration aligning the sensors while driving.

129.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that are independent of an underlying hardware platform and allow for combinations of communication, operational, or both communication and operational conduct for communication, operational, or both communication and operational tasks, as required by claim 1. By way of example, Toyota Safety Sense is independent of the underlying platform and can be used across Toyota models, including the Toyota RAV4. Lexus Safety System+ is independent of the underlying platform and can be used across Lexus models, including the Lexus RX. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform operational tasks, including Dynamic Radar Cruise Control, Pre-Collision System, and Lane Tracing Assist. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform communication tasks such as communication with the sensors and over-the-air software updates.

130.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services comprising a peripheral service, and a sensor service, an actuator service, or both a sensor service and an actuator service, as required by claim 1. By way of example, vehicles with Toyota Safety Sense and Lexus Safety System+ perform peripheral services such as a USB connection, an instrument cluster display for indicating services' alert functions, and the electronic power steering motor system; and they also perform peripheral services when they perform actuator and sensor services. Vehicles with Toyota Safety Sense and Lexus Safety System+ perform a sensor service such as a radar used in Dynamic Radar Cruise Control. Vehicles with Toyota Safety Sense and Lexus Safety System+ indicate an actuator service such as automatic emergency braking in Pre-Collision System.

131.    Vehicles with Toyota Safety Sense and Lexus Safety System+ practice a set of application services that comprises a service to manage synchronous, asynchronous, and real time application threads, as required by claim 1. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ have a service to manage multiple threads providing information from, for example, sensors. On information and belief, vehicles with Toyota Safety Sense and Lexus Safety System+ receive messages from certain synchronous, asynchronous, and real-time application threads and use the service to determine how to process and prioritize the information to make the ADAS applications function. As a non-limiting example, on information and belief, some versions of Toyota Safety Sense and Lexus Safety System+ have used Blackberry QNX Neutrino, which can be configured to manage synchronous, asynchronous, and real-time application threads. As QNX publicly documents, "[s]ynchronous messaging is the main form of [interprocess communication] in the QNX OS." QNX also manages asynchronous threads, such as "pulses": "In addition to the synchronous Send/Receive/Reply services, the OS also supports

41

fixed-size, nonblocking messages." And QNX can manage real time application threads too, such as "POSIX realtime signals that may queue and pass data."

132.    Further, since the fall of 2017 or at least since the date of the Complaint, the Toyota Defendants have willfully infringed and continue to willfully infringe at least claim 1 of the '233 Patent. The Toyota Defendants have had a number of contacts with Perrone Robotics, Inc. since the '233 Patent issued in 2015. On August 24, 2017, Perrone Robotics, Inc. and Toyota Research Institute signed a Limited Mutual Nondisclosure/Confidentiality Agreement to facilitate sharing sensitive business information "in connection with evaluating potential collaboration, evaluation, development or other commercial opportunities between the parties." Around September 2017, Perrone Robotics, Inc. gave a presentation to Toyota titled the "MAX Platform for the Autonomy of Things." The presentation stated on the bottom of every page that "MAX is patented in the U.S. (9,195,233)."

133.    In May 2018, Paul Perrone met with representatives of the Toyota Defendants at the Intel Capital Global Summit. Later that month, Perrone sent Toyota representatives a pitch deck and technology decks for MAX and Perrone Robotics, Inc. These pitch decks referenced Perrone Robotics, Inc.'s '233 Patent, and Perrone Robotics, Inc.'s website identified the '233 Patent. The Toyota Defendants then asked for a follow-up call in June 2018. In July 2018, the Toyota Defendants declined to invest in Perrone Robotics, Inc.'s technology. The Toyota Defendants informed Paul Perrone that they were using ROS as their operating system for ADAS and did not intend to switch to Perrone Robotics, Inc.'s MAX system at that time.

134.    In December 2019, a member of the Toyota Defendants' Automated Driving & Advanced Safety System Development Division reached out to Paul Perrone and asked him for a private meeting at the CES 2020 conference. The Toyota Defendants sent a detailed agenda for

the proposed meeting, requesting information about technical details such as: "Target performance (speed, area, etc.)," "Safety technology and comfortability (including tuning)," "Sensor(sensor type, supplier, mounting, etc.)," "HD map," and "Infrastructure coordination." The Toyota Defendants also wanted to discuss Perrone Robotics, Inc.'s business model and targets, the planned development structure, partnerships with other companies, and how to generate profit from Perrone Robotics' patented technology. At the time, Perrone Robotics, Inc.'s website listed both the '901 and '233 Patents.

135.    Instead of licensing the patented invention from Perrone Robotics, the Toyota Defendants decided to intentionally infringe the '233 Patent. The Toyota Defendants had multiple meetings with Perrone Robotics where they learned about Perrone Robotics' patented technology. Despite knowing that Perrone Robotics had patented this technology, the Toyota Defendants set out to rely on the technology in their vehicles, including those vehicles that have had Toyota Safety Sense and Lexus Safety System+. By making, using, selling, importing, and/or offering for sale vehicles that they knew infringed one or more claims of the '233 Patent, the Toyota Defendants intentionally and deliberately infringed the '233 Patent, and are liable for willful infringement

136.    Further, at least since being served with this Complaint and on information and belief at times after the mid-2018 discussions with Perrone referenced above, the Toyota Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '233 Patent. The Toyota Defendants actively induce infringement of the '233 Patent under 35 U.S.C. § 271(b). With specific intent to induce infringement, the Toyota Defendants knowingly induce their customers and dealers to use, sell, and offer for sale vehicles that they know or should know infringe one or more claims of the '233 Patent. The Toyota Defendants instruct their customers to use and instruct their vehicle dealers to sell and offer for sale vehicles containing the patented

invention and specifically intend for those customers and dealers to infringe one or more claims of the '233 Patent by using, selling, and offering for sale vehicles containing infringing technology such as Toyota Safety Sense and Lexus Safety System+. Among other inducement actions, the Toyota Defendants' instructional, marketing, and sales materials inform customers and dealers about the use of Toyota Safety Sense and Lexus Safety System+ and tout the advantages of using Toyota Safety Sense and Lexus Safety System+.

137.    The Toyota Defendants' acts of infringement have caused and continue to cause damage to Perrone Robotics, and Perrone Robotics is entitled to recover from the Toyota Defendants the damages they have sustained as a result of the Toyota Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '233 Patent, together with interests and costs as fixed by the Court.

138.    The Toyota Defendants have had notice of the '233 Patent at least as of mid-2018.

139.    At all times since the '233 Patent issued, Perrone Robotics has marked the patented articles it makes and offers for sale in the United States under 35 U.S.C. § 287 in a substantially consistent and continuous manner, including by marking the patent on the MAX software's info file.

140.    Likewise, since the '233 Patent's issuance, Perrone Robotics, Inc. has included on its website a patent mark:

© 2015 Perrone Robotics. All rights reserved. Perrone Robotics and MAX are registered trademarks of Perrone Robotics, Inc. MAX is patented in the U.S. (Patent No. 9,195,233). MAX is patent pending internationally. AVTS, the DAK, and TRV are patent pending.

## Jury Demand

141.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Perrone Robotics, Inc. and Perrone Robotics Innovations, LLC demand a trial by jury on all issues.

Fees and Costs

142.     To the extent that the Toyota Defendants' willful and deliberate infringement or litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Perrone Robotics is justified pursuant to 35 U.S.C. § 285.

Prayer for Relief

Plaintiffs Perrone Robotics, Inc. and Perrone Robotics Innovations, LLC request entry of judgment in their favor and against the Toyota Defendants as follows:

a.     Declaring that the Toyota Defendants have infringed the Patents-in-Suit, contributed to the infringement of the Patents-in-Suit, and/or induced the infringement of the Patents-in-Suit;

b.     Awarding Perrone Robotics damages arising out of this infringement of the Patents-in-Suit, including enhanced damages pursuant to 35 U.S.C. § 284, and prejudgment and post-judgment interest, in an amount according to proof;

c.     Awarding Perrone Robotics attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

d.     Awarding Perrone Robotics such other costs and further relief as the Court may deem just and proper.

Dated this 24th day of November, 2025.                    Respectfully submitted,

                                                          /s/ Shawn Blackburn
                                                          Shawn Blackburn (TX 24089989)
                                                          Sy Polky (TX 24102365)
                                                          Hunter Vance (TX 24102596)
                                                          Larry Liu (TX 24133399)
                                                          Whitney Wester (TX 24080420)
                                                          SUSMAN GODFREY L.L.P.
                                                          1000 Louisiana
                                                          Suite 5100
                                                          Houston, TX 77002
                                                          Telephone: (713) 651-9366
                                                          Facsimile: (713) 654-6666
                                                          sblackburn@susmangodfrey.com
                                                          spolky@susmangodfrey.com
                                                          hvance@susmangodfrey.com
                                                          lliu@susmangodfrey.com
                                                          wwester@susmangodfrey.com

                                                          Sarah Pike (CA 337690)
                                                          SUSMAN GODFREY L.L.P
                                                          1900 Avenue of the Stars
                                                          Suite 1400
                                                          Los Angeles, CA 90067
                                                          Phone: (310) 789-3100
                                                          Fax: (310) 789-3150
                                                          spike@susmangodfrey.com

                                                          Andrea Fair (TX 24078488)
                                                          MILLER FAIR HENRY PLLC
                                                          1507 Bill Owens Pkwy.
                                                          Longview, TX 75604
                                                          Phone: (903-757-6400
                                                          Fax: (903) 757-2323
                                                          andrea@millerfairhenry.com

                                                          Attorneys for Plaintiffs Perrone Robotics,
                                                          Inc. and Perrone Robotics Innovations, LLC