**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PERRONE ROBOTICS, INC. AND PERRONE ROBOTICS INNOVATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC. AND TOYOTA MOTOR CORPORATION,<br><br>Defendants. | Case No. 2:25-cv-1150-JRG-RSP<br><br>(LEAD CASE) |
| PERRONE ROBOTICS, INC. AND PERRONE ROBOTICS INNOVATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>KIA AMERICA, INC. AND KIA CORPORATION,<br><br>Defendants. | Case No. 2:25-cv-1151-JRG-RSP<br><br>(MEMBER CASE) |

**PLAINTIFFS' MOTION TO COMPEL**

**COMPLIANCE WITH LOCAL PATENT RULE 3-4**

The P. R. 3-4 deadline expired over three months ago. Toyota has produced none of the "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation" of the Accused Instrumentalities.[1] Toyota[2] claims it has no access to any source code for Toyota Safety Sense ("TSS"). Ex. 1 (Decl. of Sarah Almond Pike ("Pike Decl.")) ¶ 3, Exs. A, B. The record flatly contradicts that claim: Toyota engineers authored the original TSS's pre-collision algorithm; TMNA engineers designed TSS 2.0's data recorders; Toyota patents TSS features jointly with DENSO; Toyota told NHTSA last fall that it reviewed the "software programming" inside a DENSO-built ECU and pushed an update to over a million vehicles; Toyota has produced its own and its affiliate DENSO's code in prior federal litigation; and Toyota once gave DENSO-written source code to NASA—touting it as Toyota's own intellectual property. Three independent grounds compel production. First, Toyota and its wholly owned subsidiaries write, hold, and distribute the accused software. Second, DENSO is Toyota's affiliate under the established five-factor control test. Third, Toyota has the contractual right—and the demonstrated practical ability—to obtain DENSO's code on demand. Toyota should be compelled to comply with P. R. 3-4.

## I. LEGAL STANDARD

A party may move to compel when an opponent "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv); *see* Dkt. 50 ¶ 3(b); P. R. 3-4(a) (imposing production obligations without any request). Rule 34 reaches all materials in a party's "possession, custody, or control," and a party has control if it "has the legal right to obtain the

---

[1] Toyota has not denied having specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of the Accused Instrumentalities but has still not produced that information either.

[2] "Toyota" refers collectively to Defendants Toyota Motor North America, Inc. ("TMNA") and Toyota Motor Corporation ("TMC").

documents on demand or has the practical ability to obtain the documents from a non-party." *Estate of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004). Where documents are held by a corporate relative, "the nature of the relationship . . . is the key." *Id.* Courts assess five factors: "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation." *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011); *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-cv-02885, 2014 WL 3848110, at *3–4 (W.D. La. Aug. 5, 2014). Under this framework, "judges in this circuit regularly require parties to produce documents in the possession of a corporate relative," and prior production of a relative's documents is evidence of control. *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 81 (E.D. La. 2024); *accord Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 4:20-68, 2020 WL 10046089, at *14 (E.D. Tex. July 8, 2020).

## II. ARGUMENT

### A. Toyota Possesses the Accused Software: it writes, holds, and distributes TSS code in every accused generation.

The asserted patents claim in part software architectures for automated vehicles, and the accused TSS and Lexus Safety System+ ("LSS+") features exist as executable code. Compl. (Dkt. 1) ¶¶ 21–28, 31–36. Toyota's wholly owned software subsidiary, Woven by Toyota, wrote the current generation code. Woven announced that its software development platform Arene was "leveraged to develop software powering" the latest TSS used in "the new RAV4's TSS system," a generation in the accused-model list (through MY2026). Pike Decl. ¶ 4; Compl. Ex. F. Woven's engineers describe correcting "about 60,000 errors in the software of a recognition module for

advanced driver assistance," which is "code [they] had developed internally." *Id.* at ¶ 5. If "Toyota" possesses no TSS code, who wrote Woven's?

For the original TSS, three TMC engineers published the SAE paper on the Pre-Collision System, stating the "collision determination algorithm for pedestrian targets enabled" its development and "Toyota has developed warning and pre-collision brake assist." *Id.* at ¶ 6. For TSS 2.0 and after, four TMNA engineers published the design of the software's internal data recorders: "PCS-O and PCS-I data became available with the launch of Toyota Safety Sense (TSS)." *Id.* at ¶ 7. Three additional TMC engineers co-designed the ADAS software architecture with Woven Core and J-QuAD: "[w]e have also designed the ECU." *Id.* at ¶ 8. And Toyota patents these features *as software*: U.S. Patent No. 10,471,961 (2015 priority; joint with DENSO); 10,479,358 ("the CPU is configured to realize various functions by executing instruction (program) stored in the ROM"); 12,434,673 (issued 2025; joint with DENSO; claiming a "non-transitory computer-readable storage medium storing a driving support program"). Pike Decl. ¶ 9.

Toyota's own technical journal confirms authorship and possession across generations. For TSS-P, Toyota developed "a collision judgment algorithm that factors in pedestrian movements," "adjusted" the radar "reception threshold . . . to match the reflection level of a pedestrian," and "calibrated" it on "more than 70 vehicles worldwide." *Id.* at ¶ 23 (TTR Vol. 62 (2016) at 105, 107, 109). For TSS-C, "a new deceleration feedback control algorithm was developed," its modules split between the sensor ECU and the brake ECU. *Id.* (Vol. 62 at 148). Road Sign Assist, "realized by dedicated software," was calibrated on "80,000 items of road sign data" across "37 European countries" and tested on a Toyota-built hardware-in-the-loop simulator. *Id.* (Vol. 62 at 157, 159). Toyota then developed "[a]n updated version of the TSS" with "the invaluable cooperation of Denso Corporation." *Id.* (TTR Vol. 66 (2021) at 81).

Toyota maintains custody of the code. A 2019 Toyota campaign instructed dealers to "Update the Pre-Collision 2 System Calibration ID" on TSS-P-era vehicles. Pike Decl. ¶ 20. For TSS 2.0 (DENSO's second-generation package installed in all Toyota vehicles per DENSO, Pike Decl. ¶ 19) through TSS 3.0, Toyota tracks the accused software by version ("TSS 2.0/2.5/3.0") and reads its internal records in Toyota's NHTSA crash submissions. *Id.* at ¶ 11. For the current generation, Toyota's documents locate the code ("software for TSS functions including the Pre-Collision System (PCS)" in the camera's computer), diagnose its defects ("inappropriate programming of the software within the forward recognition camera"), and administer the fix ("Toyota dealers will update the software"). *Id.* at ¶ 10.

Toyota's own federal regulatory filings are dispositive. In Recall No. 25V-744 (Oct. 30, 2025), covering 1,024,407 vehicles, Toyota reported that a Parking Assist ECU supplied by "DENSO International America, Inc." and "DENSO CORPORATION" contained defective code: "[t]he software in this ECU may cause" the rearview image to freeze or fail to display, in violation of FMVSS No. 111. *Id.* at ¶ 21 (25V-744 Report at 1, 16–17). Toyota then accessed and fixed the code: "Toyota conducted a review of the Japan spec PVM system software programming"; in bench testing, "Toyota found" the two failure modes; and Toyota's "software programming review" "discovered" that the errors "could affect" "the global spec PVM systems, including those sold in the U.S." *Id.* (Report at 26). Toyota's testing resolved the defect to the ECU software's internal timing: reverse selected "within 0.7 to 2.6 seconds after ignition on"; "two 23 millisecond camera optical alignment data writing processes." *Id.* A company that reviews a DENSO ECU's programming, characterizes its millisecond-level internals, and pushes corrected software into a million vehicles "possesses, controls, and has access" to that source code. Toyota said as much in a federal regulatory filing.

Toyota has treated DENSO-written code as its own. When NASA reviewed Toyota's engine-control software at NHTSA's request, NASA found that "[t]he system design and software specification is performed by TMC engineers" while "[t]he detailed software design, implementation, and unit-tests are done by DENSO engineers." *Id.* at ¶ 22 (Report App. A at 19). "After delivery of the code to TMC," Toyota ran the integration tests. *Id.* NASA examined "more than 280,000 lines" of that code, *id.* (Report at 16), in facilities "maintained within offices controlled by Toyota," with "a version of the compiler suite that Toyota uses to compile their source code," under an agreement "not to remove Toyota intellectual property from this location, most notably software source code and design documents." *Id.* (App. A at 7–8). DENSO wrote the code as "the software contracting company employed by Toyota." *Id.* (App. A at 9). Toyota received it, compiled it, housed it, and called it Toyota's intellectual property. That is possession.

**B. DENSO is Toyota's Affiliate Under the Five-Factor Control Test.**

Start with what the parties call each other. Toyota's "Toyota Group Company Information" page lists the group's members, including DENSO. *Id.* at ¶¶ 14–15. Toyota's 2023 announcement of a partial share sale names Toyota, DENSO, Toyota Industries, and Aisin as the group's "core group companies." *Id*. at ¶ 15. Toyota's SEC filings describe "Denso Corporation, an affiliate of Toyota." *Id.* at ¶ 16. DENSO reciprocates: it "belongs to a corporate group that includes Toyota Motor Corporation as its other affiliated company," *id.* at ¶ 12, and tells U.S. investors it is "considered an affiliate of Toyota Motor for accounting purposes." *Id.* at ¶ 13 (Offering Circular at 8). Each calls the other an affiliate. The Court can take both at their word.

Every factor confirms that relationship. ***Ownership and intermingled personnel:*** Toyota is DENSO's largest shareholder (21.25% of shares; 22.24% of voting rights); TMC's Chairman of the Board sits on DENSO's board; and employees are "seconded to and from Toyota Motor." *Id.*

at ¶¶ 12–13; *see also id.* at ¶¶ 14–16. In 2020, Toyota transferred its electronics production "and the development functions of Toyota Motor" into DENSO. *Id.* at ¶¶ 12–13.

***Ordinary-course document exchange:*** Toyota authors the functional specifications its suppliers build to—"they go to suppliers with these specifications and say build this." *AutoConnect Holdings LLC v. Toyota Motor Corp.*, No. 2:24-cv-00802-JRG-RSP (E.D. Tex.), Dkt. 99 (Tr. 7:12–8:4). Validation results flow "directly to Toyota Design." Pike Decl. ¶ 18 (SQAM § 3-4). Suppliers must "comply with any request for Toyota documentation." *Id.* (SQAM § 1-1). And supplier software changes require prior "Toyota approval." *Id.* (SQAM § 4-5A). DENSO's federal filings confirm: "DENSO is cooperating with other vehicle manufacturers' analysis"; "[t]he remedy program, if any, will be determined by vehicle manufacturers." *Id.* at ¶ 24.

***Involvement in the transaction:*** the accused system is the joint product that DENSO "worked with Toyota to develop." Toyota's Global Safety Package software is written with its venture J-QuAD DYNAMICS on a vision sensor built "for Toyota Motor Corporation." *Id.* at ¶ 19. Toyota supplies 54.5% of DENSO's revenue. *Id.* at ¶ 13 (Offering Circular at 18).

***Involvement in the litigation:*** DENSO answered a subpoena with the spreadsheet and declaration on which Toyota's own invalidity defense rested in *Emerging Automotive*, No. 2:23-cv-00437-JRG (E.D. Tex.) (Dkt. 297 Tr. 68:9–21, 115:3–20). DENSO is involved in this case: its counsel approached Perrone directly about resolving these claims; Perrone served third-party subpoenas on DENSO; DENSO appears to be Toyota's indemnitor; and Toyota sought to designate DENSO's outside counsel, Mr. Anri Nakamoto, as its litigation consultant with access to Perrone's designated materials. *See* Dkt. 69 (Pls.' Mot. for Disqualification or Protective Order (filed Aug. 24, 2026)). A supplier with no stake in a lawsuit does none of that.

**C. Toyota Has the Contractual Right to Obtain the Code on Demand.**

Toyota's standard supplier agreements give Toyota multiple rights to obtain source code:

Software Items "will be delivered to the applicable Toyota Party in Executable Code and, if required in the applicable Contract Document, Source Code form." Pike Decl. ¶ 17 (§ 3.6.2). "If directed" by Toyota, Supplier must promptly place the Software Deposit Materials in escrow," defined to include "the Source Code," "internal repositories," the "build environment," and "other materials or information requested by a Toyota Party." *Id.* (§ 5.7.8; Definitions at 49). Supplier must provide "any other information and data of Supplier . . . with regard to the design . . . of any Items" on request. *Id.* (§ 5.7.5). And for any "audit or investigation . . . initiated by a third party and involving a Toyota Party" (this action), Supplier must provide "all materials, information, and documents when and as requested." *Id.* (§ 1.4; *accord* § 1.6.1 (audit-and-duplication right)).

Toyota has exercised these rights before. In the *In re Toyota Motor Corp. Unintended Acceleration* MDL, No. 8:10-ml-02151-JVS (C.D. Cal.), Toyota agreed to a court-adopted discovery plan under which "Toyota will make a request to Denso" for the materials plaintiffs identified. Dkt. 2691-1 at 7. When plaintiffs pressed, the Special Masters ordered Toyota to produce DENSO-authored code or swear that "Toyota has requested said documents from DENSO and DENSO has refused to give them to Toyota." Dkt. 2621-1 at 3. Four weeks later, DENSO's counsel announced it had "delivered the Denso source code to the secured facility," atop an established practice in which "Toyota has produced source code from DENSO for other systems." Dkts. 2787-1 at 5 (Tr. 4:6–9); 2644 at 8; 2945-1 at 31.

## III. RELIEF REQUESTED AND CONCLUSION

Perrone respectfully requests that the Court grant this motion and order Toyota to produce, within fourteen days and subject to Protective Order ¶ 14, TSS/LSS+ source code, build materials specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of the Accused Instrumentalities, from Toyota, its subsidiaries and affiliates.

Dated: September 3, 2026

Respectfully submitted,

/s/ *Shawn Blackburn*
Shawn Blackburn (TX 24089989)
Meng Xi (TX 24132850)
Sy Polky (TX 24102365)
Hunter Vance (TX 24102596)
Whitney Wester (TX 24080420)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Phone: (713) 651-9366
Fax: (713) 654-6666
sblackburn@susmangodfrey.com
mxi@susmangodfrey.com
spolky@susmangodfrey.com
hvance@susmangodfrey.com
wwester@susmangodfrey.com

Anna C. Gorn (CA 337548)
Sarah Almond Pike (CA 337690)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150
agorn@susmangodfrey.com
spike@susmangodfrey.com

Andrea Fair (TX 24078488)
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Phone: (903) 757-6400
Fax: (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Plaintiffs Perrone Robotics, Inc. and Perrone Robotics Innovations, LLC*

**CERTIFICATE OF CONFERENCE**

Counsel for Plaintiffs have conferred with counsel for Defendants on August 17, 2026, and counsel for Defendants is opposed as to the disposition of the matters raised in this motion. The personal conference required by Local Rule CV-7(h) included lead and local counsel for both sides; the participants compared their views and made a sincere effort to resolve the dispute by agreement; and the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Sarah Almond Pike*
Sarah Almond Pike

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Sarah Almond Pike*
Sarah Almond Pike